Judge Tucker.
This was an action for a tort, brought by the appellee Benning against the appellant, in which the former obtained a verdict against him for £ 500, for secretly and maliciously taking and carrying away the slaves and other property of one Peter May (against whom he had lawful cause of action) to parts unknown, and for still keeping, secreting, and concealing them, and also for aiding, assisting, and counselling the said Peter May in removing himself to parts unhiozvn, to the end that the plaintiff might be prevented from recovering against him; with an averment that by such removal of the property, and of the said Peter himself, to parts unknown, the *596 plaintiff has been prevented from recovering his demand of £ 500, to his damage £ 700.
To the judgment rendered in this suit the appellant obtained an injunction, on a suggestion that he was the real owner of the slaves removed, and not Peter May — > and further suggesting a variety of matter with a view to show that Benning’s demand against Peter May was overrated by the jury, and the damages excessive — but not charging any surprize at the trial, nor denying that part of the charge in the declaration, which relates to the concealment of Peter May's o%vn person., or of his other property, except the slaves. The Chancellor directed a second trial to be had, when the jury found a verdict for £ 475 6 8, and after some further , proceedings in the Chancery Court, not material to my view of the case, dismissed the bill.
The District Court before which the first trial was had was moved for a new trial, and after taking time to consider of the motion, overruled it — after which the appellant applied for and obtained his injunction.
Courts of common law have been with reason very reluctant in granting new trials merely on the ground of excessive damages, in actions founded upon a tort; unless there has been some allegation of surprize upon the party, or some misconduct on the part of the jury. Ñor have they of late years in England granted them, without hearing the report of the Judge who presided at the trial. In this case, the Judges who did preside, and hear the evidence were moved for a new trial, and refused it. No exception-was taken to any opinion of the court upon the trial, nor was any offered to that overruling the motion. This may be considered as equivalent to the report of the Judge, and a decision at bar on a motion for a new trial. The interposition of a court of equity after such proceedings had, is I believe without example in that country from' which we have borrowed our system of jurisprudence, however frequent here, of late years. That such an interposition may sometimes be necessary and proper, especially after trials in the inferior courts I am not disposed to deny. But where the Judges of a Superior Court have presided on a trial, and have on mature deliberation refused to grant a new trial, it would seem to me that the interposition of a Court of Equity should be sparingly administered, unless for some, reason which evidently could not have been submitted to the consideration of the court refusing the new trial. And after the solemn deci» *597 sions of ibis court in the cases of Maupin v. Whiting, and Terrel v. Dick (1 Call, 224 and 546) in the former of which it was decided that, where the defence is purely legal, it should be made on the trial at law; and in the latter that, after a cause has been once fully decided at common law, ecpiity ought not to interpose; in both which decisions I most heartily concur;' we may hope that the line of .demarcation between the two jurisdictions will be more attended to.
The defence in the present case was such as might, and probably was, made at law on the first trial. The papers described by Mr. Venable in his deposition, with which Meredith furnished his counsel, were probably kept back from the conviction which they felt that those papers were either inadmissible, or unimportant. And as far as I can judge of the contents of them from their titles, I am of the same opinion. The gist of the action was for the maliciously aiding Deter May to remove himself and his property to parts unknown to the plaintiff, to the end that the plaintiff' might be prevented from recovering the money he had been compelled by a legal judgment to pay for him. The tort was not confined to the removal of his slaves, or other property: it is expressly charged that he aided, assisted, and counselled him to remove himself as well as his property ; and that he did this maliciously with a view to deprive the plaintiff of his legal remedy against him. The whole charge was put in issue by the plea of not guilty — The jury have found the malice and the intent, as well as the facts both with respect to his person, and his property. A case more properly belonging to the determination of a jury cannot easily occur — they had a right to make the plaintiff’ a full compensation for all the inconvenience and expense he had been put to by the defendant’s malicious conduct. For in matters of tort the jury have a right, if they see proper, to give vindictive damages. The case of Halcomb v. Flournoy, (2 Call, 433) is altogether different; it was an action of debt, not an action founded on a tort. But even in that case a majority of the court thought that the awardof the arbitrators, who were jurors of the parties’ own choosing, ought to be sustained, notwithstanding the damages awarded might have been given in consideration of injury sustained beyond the principal and interest of the money actually paid. This I think is evident from the award itself; the arbitrators declaring that it appeared to them that the plaintiff had been put to very great trouble and expense by travelling to and from Richmond, and that *598 his negroes had been taken in execution to satisfy the judgments against him, and were kept out of his possession and service at various times, from which he sustained losses. If the jury in the present case have exceeded'the exact measure of principal and interest paid by Benning, we are to presume that they had sufficient evidence before them to satisfy them that he had sustained injury beyond that measure, and that the court also was satisfied on the same point. The second jury gave a verdict for the same sum wi'thin £ 25 which shows they probably proceeded on similar grounds. Such a concurrence ought to have satisfied the Court of Chancery that the first verdict was not unreasonable — I therefore think the dissolution of the injunction, and the final dismission of the bill was perfectly right, and that the decree ought to be affirmed.
Judge Roane.
It does not satisfactorily appear from the report of the referees, (Woodson and others,) or from any other testimony in the cause, that the money recovered from P. May and his sureties, in June 1788, was not due by him to his principal. All the defendants were notified of the motion, and this ground of defence- was not taken by any of them; but the judgment was acquiesced in. Notwithstanding this judgment, all the securities were safe, as long as P. May himself had property adequate to the payment of the debt, and within the reach of the process of'the court. Benning, fearing that the whole, or greater part of the debt would fall On him, in consequence of the eloigning of May’s property, brought his action against Meredith for assisting in carrying away and secreting the property. / This action, though, in form, an action of tort, was, in respect of damages, to be regulated by the actual injury sustained, or liable to be sustained; and if it now clearly appeared that this limit was exceeded by the verdict, I will not say but that that verdict should be pared down to the proper standard. It was not an action sounding merely in damages, but one in which a just criterion was afforded whereby the damages should be estimated.
The injury complained of in the action in Prince Edward District Court was, that, whereas P. May had property amply sufficient to pay the whole , del}t, and thus secure Benning from all loss whatsoever, this property was eloigned by the defendant Meredith, and Benning made liable, in the event of his co-securities’ insufficiency, to pay the -whole sum due on the judgment in question, as well as other sums for whiph P. May should be found *599 to be liable. Admitting that the damages recovered by Benning do not exceed what he has paid, and is liable to pay, on account of his suretyship for May, the effect of the judgment against Meredith is to place him (Benning) in the same situation as if May’s property had never been removed, and was sufficient to pay all his debts as sheriff, for which Benning was liable. It substitutes Meredith, in lieu of May, in standing between Benning and loss. It admits that May had property enough to effect this object, and that Meredith by his act has made the debt his own.
It would be entirely inconsistent with this idea to divide this debt between Benning and Meredith, and make Ben-ning subject to some loss ; for the jury were satisfied when they rendered their verdict, that Benning should be subjected to No loss whatever. Notwithstanding the deposition of one of Meredith’s counsel in the action at law; as a motion for a new trial was made and overruled, and no exception taken, we must conclude that enough was proved in the action to support the verdict. It would be a dangerous proceeding for us to open a verdict, on the ground of a defence which was known but not used in the trial at law; I here allude to the appellant’s claim of property in the slaves removed.
But, however it was in the first trial, the appellant might have used this defence in the trial of the issue in the District Court of Richmond, fie either did not then use it, (and, if so, his omission makes against him in the present case,) or if he did, that defence was reprobated by the jury, (who are the best judges of credibility,) on a full consideration of the testimony in the cause; and this last verdict, concurring with the first would seem conclusive on the point.
The question then recurs, is John Benning placed in a better situation by the last verdict, than if P. May’s property had been sufficient for his indemnification, and had never been eloigned ? The report of the commissioner shows that, on the 22d of September 1802, Benning had paid (including the judgment of 1793 for £ 103 0 9‡ and interest on both judgments,) £ 602 4 7. — If the sum paid with interest on account of the last judgment be deducted, he will have paid about £s 10; and that solely on account of the first judgment; without taking into account the sums which he alleged (and which he may have proved to the jury) that he was compellable to pay to private individuals; or taking into account his possible liability to divide with Charles May the sum which he {May) has bee's *600 compelled to pay, on account of that judgment, or other judgments against P. May. Even this last sum, standing singly, exceeds the amount of damages assessed by the Richmond jury, if we were even to add thereto interest up to the date of the commissioner’s report. We cannot, therefore, without entirely losing sight of the ground ¿of the action in Prince Edward District Court, which went to an entire indemnity of Benning, and to place him in the same situation as if P. May’s estate was yet amenable to the'judgments against him, and sufficient to satisfy them, subject Benning to any abatement of the sum recovered by the verdict of the Richmond jury. Meredith therefore must stand, where the jury of Prince Edward has placed him, as interposing between the surety and P. May, and subject to the estimated damages arising from his misfeasance in the instance in question. He does not stand in this case in the light of a security, and as having,a claim to contribution from his co-securities; but is to retribute to Benning that injury which he has actually sustained by means of his {Meredith’s') conduct in relation to May’s negroes. Benning therefore is to be protected from all loss on account of P. May’s default in the present instance, within the limits of the sum found by the jury, and is not to divide with Meredith the sum actually paid for P. May.
■ My opinion is that the decree is right and should be affirmed.
Judge Flehing.
This being originally a special action for a tori committed by the appellant, Meredith, in secretly and maliciously taking and carrying to parts unknown the property of Peter May, deputy sheriff of Buckingham County, against whom the plaintiff Benning had a legal claim as one of his securities; and also for counselling and assisting the said Peter in removing himself to parts unknown, whereby the said plaintiff was prevented from recovering indemnification of the said Peter; it appears to me that an inquiry, after the verdict, into the accounts between Johns, the high sheriff, his deputies and their securities, and whether Peter May was responsible for the malfeasance of William May another under-sheriff, was improper, as the whole matter was probably, or might have been before the jury on the trial at law; the result of which was a verdict for £ 500 damages; and a motion for a new trial to the court that heard the whole evidence, was overruled, after time had been taken to consider the *601 motion; from which circumstance it is to be presumed that the court was satisfied the verdict was neither contrary to evidence, nor the damages excessive.
The defendant Meredith, however, on a suggestion of surprize at the trial, and stating in his bill sundry matters respecting the original controversy, obtained an injunction in the High Court of Chancery, which, after several interlocutory orders, directed a new trial of the issue at law, which was had before the District Court of Richmond: where there was no suggestion of surprize on the part of the defendant; and there, the jury, who were the proper judges of the facts proved by the evidence, and of the measure of damages to be given thereon, assessed the damages to £475 6 8.
This verdict being reported to the High Court of Chancery, a commissioner was directed to report an account of the sum due from Peter May to Johns the high sheriff, and of the payments made by the sureties respectively: on which report it appeared that Benning was a creditor for payments to the amount of £ 602 4 7; whereupon, on a final hearing of the cause, the plaintiff’s bill was dismissed with costs: which, as the controversy between Benning and Meredith was not a matter of account, but simply an action for damages for a tort, ought in my conception, to have been done, without reference to a commissioner.
It is a difficult matter to draw the true line between the jurisdiction of courts of law and courts of equity; hut there is a well-settled general principle, which admits of but few exceptions; that, where a person, seeking aright, has a complete remedy at law, he shall not go into a court of equity to obtain it; so, on the other hand, where a defendant, in an action at law, has a full and complete defence in his power, and neglects to avail himself of it, he shall not go into a court of equity for relief: and, therefore, courts of equity should be cautious in granting injunctions to judgments fairly obtained at law. The great disproportion between the number of those that are dissolved and of those, that are made perpetual verifies the position.
I am, in this case of opinion with the other Judges that the decree, dismissing the bill with costs, is correct, and ought to be affirmed.
By the whole court (consisting of Judges Fleming, Roane and Tucker) the decree of the Chancellor was AFFIRMED.